# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-CA-00285-SCT

*JONATHAN CARR*

*v.*

*MISSISSIPPI LOTTERY CORPORATION*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/08/2019 |
| TRIAL JUDGE: | HON. ROGER T. CLARK |
| TRIAL COURT ATTORNEYS: | BRETT WOODS ROBINSON |
| | CHRISTOPHER BRIAN McDANIEL |
| | BRYAN CARL SAWYERS |
| | JONATHAN PAUL DYAL |
| | RODERICK MARK ALEXANDER, JR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | CHRISTOPHER BRIAN McDANIEL |
| | BRETT WOODS ROBINSON |
| ATTORNEYS FOR APPELLEE: | RODERICK MARK ALEXANDER, JR. |
| | BRYAN CARL SAWYERS |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | APPEAL DISMISSED - 04/01/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KITCHENS, P.J., MAXWELL AND CHAMBERLIN, JJ.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.     This case involves cybersquatting, also called domain-name hijacking. In the year leading up to the Mississippi Legislature's statutory creation of a lottery, Jonathan Carr registered more than fifty domain names with some iteration of the name Mississippi Lottery. The newly created Mississippi Lottery Corporation accused Carr of cybersquatting—i.e.,

registering the names in bad faith so that he could sell them to the Lottery for a profit.[1] Carr

countered with a claim of *reverse* domain-name hijacking, asserting the Lottery had violated

his ownership rights to the domain names, which he contends he registered in good faith to

promote his religious opposition to gambling and to provide resources to those with gambling

addictions.[2]

¶2.     Carr and the Lottery filed competing motions for preliminary injunction aimed at

gaining the right to five domain names: <mslottery.com>, <mississippilottery.com>,

<mslottery.us>, <mississippilottery.us>, and <mississippilottery.org>. The trial court granted

the Lottery's motion, issuing a permanent injunction against Carr ordering that he

immediately transfer the domain names to the Lottery.

¶3.     Carr has appealed, asserting the Lottery failed to prove he committed cybersquatting.

But this Court cannot address the merits of Carr's claim because the order Carr appeals is not

final and thus not appealable.

¶4.     We therefore dismiss the appeal for lack of an appealable judgment.

## Procedural History

¶5.     Carr filed his complaint in the Harrison County Circuit Court to prevent an arbitration

---

[1] *See* 15 U.S.C. § 1125(d) (prohibiting the bad-faith registry and use of an internet domain name that is identical or confusingly similar to someone else's personal or protected name).

[2] *See* 15 U.S.C. § 1114(2)(D)(v) (providing injunctive relief to lawful domain-name owners whose domain names have been wrongfully suspended or disabled under the Anticybersquatting Consumer Protection Act).

order the Lottery had obtained against him from going into effect.[3] Carr's sole claim was reverse domain-name hijacking. *See* 15 U.S.C. § 1114(2)(D)(v). And Carr's sole prayed-for remedy was declaratory and injunctive relief from the arbitration order. But in a footnote at the end of his complaint, Carr asserted his right to amend his complaint to include a request for damages and attorney's fees.

¶6. The Lottery countersued. In its combined answer and counterclaim, the Lottery not only denied that Carr was entitled to injunctive relief but also brought five counterclaims: (1) breach of the domain-name registration agreement; (2) cyberpiracy under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d); (3) false designation of origin; (4) trademark infringement; and (5) negligence per se.[4] The Lottery prayed for

---

[3] Carr registered his multiple domain names through GoDaddy.com. Before registering, Carr had to agree to GoDaddy.com's arbitration agreement that any domain-name ownership dispute would be submitted to the National Arbitration Forum under the Uniform Domain Name Dispute Resolution Policy (UDRP). After learning of Carr's registry of the domain names, the Lottery initiated arbitration, in which it prevailed. Under the terms of the arbitration agreement, the arbitration order would be unenforceable if either party filed litigation within ten days of the order.

[4] The Lottery alleged that, by registering and operating domain names that appeared to belong to the actual Mississippi Lottery, Carr violated Mississippi Code Section 97-33-33, which the Lottery claims was enacted in part to protect it from imposters. Under this statute,

> If any person shall in any way advertise any lottery whatever, no matter where located, or shall knowingly have in his possession any posters or other lottery advertisements of any kind, save a regularly issued newspaper containing such an advertisement without intent to circulate the same as an advertisement, he shall, on conviction, be fined not less than Twenty-five Dollars ($25.00) nor more than One Hundred Dollars ($100.00), or be imprisoned in the county jail not exceeding three (3) months, or both.

Miss. Code Ann. § 97-33-33 (Rev. 2020).

statutory damages up to $100,000, actual damages, costs, attorney's fees, and both a preliminary and permanent injunction transferring the domain names to the Lottery.

¶7.     The same day the Lottery filed its answer and counterclaims, it also filed a separate motion for preliminary injunction. Because the Lottery was set to start selling tickets within two months, it pleaded for the immediate transfer of the domain names "pending a final decision on the merits by this Court." Carr responded with a competing motion for preliminary injunction.

¶8.     The trial court heard both preliminary-injunction motions on October 22, 2019. At the end of the hearing, the judge asked if, due to the lottery going live on November 25, 2019, both parties were asking for a preliminary injunction or whether they were asking for "a real injunction." Specifically, the judge asked if Carr and the Lottery "consider[ed] this to be a hearing on the merits" or instead desired full hearing on the merits later.

¶9.     The Lottery's counsel had "no objection to the court combining the preliminary injunction with relief on the merits" as permitted by Mississippi Rule of Civil Procedure 65. *See* M.R.C.P. 65(a)(2) ("Before or after the commencement of the hearing on application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application."). Carr's counsel also "agree[d] that time is of the essence." But he questioned the need for a permanent injunction. While Carr's counsel said he would "defer" to the trial judge on the question of a permanent injunction, he asserted Carr's right to a jury and wanted to make sure Carr was not waiving this right. *See id.* ("This subdivision (a)(2) shall be so construed and applied as to save to the

4

parties any rights they may have to trial by jury."). The trial judge assured Carr's counsel he did "not want to waive [Carr's] right to pursue a trial in front of a jury simply because [the court] issue[s] an injunction . . . ."

¶10.   On November 8, 2019, the judge entered an order granting the Lottery's motion for preliminary injunction and denying Carr's motion for preliminary injunction as moot. The order expressly found "that the interests of both parties and judicial economy is best served by consolidating the hearing with the trial on the merits under Miss. R. Civ. P. 65(a)(2)." But the consolidation was expressly "limited to the parties' claims for injunctive relief in the parties' Motions for Preliminary Injunction and [wa]s not to be construed to affect any rights to a jury trial either party may have." The order granted the Lottery a *permanent* injunction and directed Carr to transfer the five domain names in dispute to the Lottery. The order made no reference to the Lottery's damages claims or other requested relief.

¶11.   Thirteen days later, on November 21, 2019, Carr filed a motion for new trial, which was denied on February 21, 2020. Carr filed his notice of appeal on March 16, 2020, which stated he was appealing both the November 8, 2019 order granting and denying the motions for injunctive relief and the February 21, 2020 order denying the motion for a new trial.

**Discussion**

¶12.   As required by our law, "we must address th[e] question [of the finality of the trial court's order] on our own initiative." *Williams v. Delta Reg'l Med. Ctr.*, 740 So. 2d 284, 285 (Miss. 1999); *see also M.W.F. v. D.D.F.*, 926 So. 2d 897, 899 (Miss. 2006); *Mitchell v. Blackmon*, 760 So. 2d 691, 693 (Miss. 2000); *Gilchrist v. Veach*, 754 So. 2d 1172 (Miss.

5

2000); ***Owens v. Nasco Int'l, Inc.***, 744 So. 2d 772, 773 (Miss. 1999). After doing so, we find the order Carr appeals is not final because it did not resolve all claims presented. *See* M.R.C.P. 54(b). Thus, it is not appealable. ***Williams***, 740 So. 2d at 285.

¶13. Under Mississippi Rule of Civil Procedure 54(b), when more than one claim for relief is presented, as was the case here, an order that adjudicates fewer than all the claims for relief is not final. It is subject to revision, unless the judge makes "an expressed determination that there is no just reason for delay and . . . [gives] an expressed direction for the entry of the judgment" as final. M.R.C.P. 54(b).

¶14. In his motion for new trial, Carr asserted that the November 8, 2019 order granting the Lottery a permanent injunction "essentially granted a Motion for Summary Judgment against [Carr] in what appears to be a final judgement [sic]." But after a careful review of the hearing transcript and the order in question, we conclude the opposite. The trial court's November 8, 2019 order does *not* appear to be a final judgment. The order did resolve the parties' competing claims for injunctive relief. But it did not address the Lottery's other counterclaims and requests for damages. Indeed, the order made clear that "consolidation [with a trial on the merits] is limited to the parties' claims for injunctive relief in the parties' Motions for Preliminary Injunction and is not to be construed to affect any rights to a jury trial either party may have." In other words, the order leaves open the possibility that other claims between the parties may be tried by a jury.

¶15. To be final, the order Carr appeals must have adjudicated all claims for relief, which it did not do, or contain a Rule 54(b) certification, which it does not have. Instead, the order

6

simply granted the Lottery's motion for preliminary injunction by issuing a permanent injunction under Rule 65(a)(2) and denied Carr's motion for preliminary injunction as moot. *Cf. Williams*, 740 So. 2d at 285 (applying the "plain language of Rule 54(b)" to hold that an order that did not adjudicate claims against a second defendant was "interlocutory and not appealable").

¶16.    Under Rule 54(b), both the November 8, 2019 order and the February 21, 2020 order are interlocutory and not final.[5] Because there is no final, appealable judgment triggering our authority to review, we dismiss Carr's appeal.

¶17.    **APPEAL DISMISSED.**

    **RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**

---

[5] Moreover, should the November 8, 2019 order be construed as a final judgment, this Court would still lack jurisdiction to review it. But under this scenario, Carr's notice of appeal would have been filed *too late* as opposed to prematurely.

    Under Rule 59(b), "A motion for a new trial shall be filed not later than ten days after the entry of judgment." M.R.C.P. 59(b). Carr filed his motion for a new trial *thirteen days* after the entry of the November 8, 2019 order. So if the November 8, 2019 order was a final judgment, Carr's motion for new trial was not only untimely but also did not toll the time to appeal the judgment. M.R.A.P. 4(d). This would mean that the time to appeal the November 8, 2019 order ran in December 2019, resulting in Carr's March 2020 notice of appeal being untimely as to that order.